UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
BRENDAN A. HURSON
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-0782
MDD_BAHChambers@mdd.uscourts.gov

September 12, 2023

LETTER TO ALL COUNSEL OF RECORD

Re: *John W. v. Kilolo Kijakazi, Acting Commissioner, Social Security Administration*
Civil No. 23-117-BAH

Dear Counsel:

On January 17, 2023, Plaintiff John W. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny his claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2023). I have considered the record in this case (ECF 9), the parties' dispositive filings[1] (ECFs 12 and 14), and Plaintiff's reply (ECF 15). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will DENY Plaintiff's motion, REVERSE the Commissioner's decision, and REMAND the case to the Commissioner for further consideration. This letter explains why.

I.   **PROCEDURAL BACKGROUND**

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") and a Title XVI application for Supplemental Security Income ("SSI") benefits on January 23, 2020, alleging a disability onset of June 1, 2017. Tr. 236–49. Plaintiff's claims were denied initially and on reconsideration. Tr. 153–66. On March 3, 2022, an Administrative Law Judge ("ALJ") held a hearing. Tr. 73–93. Following the hearing, on May 25, 2022, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[2] during the relevant time frame. Tr. 50–71. The Appeals Council denied Plaintiff's request for review, Tr. 32–37, so the ALJ's decision constitutes the final, reviewable decision of the SSA. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

---

[1] Standing Order 2022-04 amended the Court's procedures regarding SSA appeals to comply with the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), which became effective December 1, 2022. Under the Standing Order, the nomenclature of parties' filings has changed to "briefs" from "motions for summary judgment." Here, Plaintiff filed a motion for summary judgment and Defendant filed a brief.

[2] 42 U.S.C. §§ 301 et seq.

*John W. v. Kijakazi*
Civil No. 23-117-BAH
September 12, 2023
Page 2

## II.   THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).  The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.  "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy.'"  *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since June 1, 2017, the alleged onset date."  Tr. 55.  At step two, the ALJ found that Plaintiff suffered from the severe impairments of "generalized anxiety disorder; post-traumatic stress disorder (PTSD); major depressive disorder; migraine; degenerative disc disease; hip osteoarthritis; and fibromyalgia."  *Id*.  The ALJ also determined that Plaintiff suffered from the non-severe impairments of "mild obstructive sleep apnea," "allergic rhinitis," "knee tendonitis," "irritable bowel syndrome," and "20/200 vision in the right eye."  Tr. 56.  At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  *Id*.  Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), except he can never climb ladders, ropes, or scaffolds; and can occasionally stoop, kneel, crouch, balance, crawl, and climb ramps and stairs.  He can perform simple and routine tasks in a setting with no fast-paced production work, such as work on an assembly line or that carries strict quotas or deadlines.  He can tolerate occasional interaction with the public, coworkers, and supervisors.  The claimant can work in a setting with no more than minor and superficial changes from day to day.

Tr. 59.  The ALJ determined that Plaintiff could not perform past relevant work as a military sergeant (DOT[3] #166.167-042) or a customer service representative (DOT #241.367-014) but

---

[3] The "DOT" is shorthand for the Dictionary of Occupational Titles.  The Fourth Circuit has explained that "[t]he *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations.  U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)."  *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

*John W. v. Kijakazi*
Civil No. 23-117-BAH
September 12, 2023
Page 3

could perform other jobs that existed in significant numbers in the national economy.  Tr. 64–65.  Therefore, the ALJ concluded that Plaintiff was not disabled.  Tr. 66.

### III.     LEGAL STANDARD

As noted, the scope of my review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards.  *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).  "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ."  42 U.S.C. § 405(g).  Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion."  *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).  It is "more than a mere scintilla . . . and somewhat less than a preponderance."  *Id.*  In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence.  *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

### IV.     ANALYSIS

On appeal, Plaintiff argues that the ALJ erroneously evaluated Plaintiff's severe fibromyalgia "in violation of *Arakas v. Comm'r of Soc. Sec*., 983 F.3d 83 (4th Cir. 2020)."  ECF 12-2, at 1.  Specifically, Plaintiff avers that the ALJ "applied the incorrect legal standard at the second step of the symptoms analysis by relying on minimal objective findings on examination to discount [Plaintiff's] fibromyalgia symptoms."  *Id.*  Defendant counters that the ALJ appropriately evaluated Plaintiff's subjective complaints in assessing Plaintiff's fibromyalgia.  ECF 14, at 6–18.

The Fourth Circuit has held that an ALJ may not "rely on objective medical evidence (or the lack thereof)—even as just one of multiple factors—to discount a claimant's subjective complaints regarding symptoms of fibromyalgia or some other disease that does not produce such evidence."  *Arakas*, 983 F.3d at 97.  In *Arakas*, the Fourth Circuit found that an ALJ properly concluded that a claimant's "medically determinable impairments 'could reasonably be expected to cause some of the alleged symptoms,' thus satisfying the first step of the symptom-evaluation framework."  *Id*. at 96.  "But at the second step, the ALJ improperly discredited [the claimant's] statements about the severity, persistence, and limited effects of her symptoms because [the ALJ] did not find them to be 'completely consistent with the objective evidence.'"  *Id*. (internal citations omitted).  "Because [the claimant] was 'entitled to rely exclusively on subjective evidence to prove' that her symptoms were 'so continuous and/or so severe that [they] prevent[ed] [her] from working a full eight hour day,' the ALJ 'applied an incorrect legal standard' in discrediting her complaints based on the lack of objective evidence corroborating them."  *Id*. (alterations in original) (internal citations omitted).  The court concluded that the ALJ "'improperly increased [the claimant's] burden of proof' by effectively requiring her subjective descriptions of her symptoms to be supported by objective medical evidence."  *Id*.

Plaintiff persuasively argues that the ALJ in this case evaluated fibromyalgia in a manner

*John W. v. Kijakazi*
Civil No. 23-117-BAH
September 12, 2023
Page 4

contrary to *Arakas*'s holding. Here, the ALJ determined that Plaintiff's fibromyalgia was severe based upon diagnostic testing which showed 14 of 18 tender points. Tr. 55, 60. The ALJ then noted that although Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 60. The ALJ then engaged in a brief discussion of Plaintiff's fibromyalgia flares:

> The record also shows some evidence of fibromyalgia flares. For instance, in May 2017 the claimant complained of a significant increase in wrist pain that did not seem to subside in the typical pattern (Ex. 3F/44, 74). The claimant was referred to physical therapy. However, his pain then subsided, with observations showing only mild wrist tenderness, with normal wrist and forearm range of motion, and no pain or instability (Ex. 3F/44, 74). It was determined that no skilled physical therapy was indicated (Ex. 1F/28; 3F/45).

*Id.* The Court agrees with Plaintiff that this discussion constitutes error under *Arakas*. As the Fourth Circuit recognized in that case, "[o]bjective indicators . . . simply have no relevance to the severity, persistence, or limiting effects of a claimant's fibromyalgia, based on the current medical understanding of the disease." *Arakas*, 983 F.3d at 97. As such, the ALJ's references to "normal wrist and forearm range of motion" and "no . . . instability," Tr. 60, are irrelevant to the proper evaluation of fibromyalgia, which produces almost no objective medical evidence of its existence.[4] *See Arakas*, 983 F.3d at 97. Indeed, a "full range of motion" is "typical of fibromyalgia." *Id.* at 91.

Moreover, the ALJ appears to have improperly assessed Plaintiff's wrist tenderness with respect to Plaintiff's fibromyalgia flare. *Arakas* recognizes that "tenderness in specific sites on the body" may be properly assessed as objective evidence of fibromyalgia. *Id.* at 97. However, if such evidence is considered, it must be "treated as evidence *substantiating* the claimant's impairment." *Id.* at 97–98 (emphasis in original). Here, the ALJ contravened that mandate by discounting the intensity of Plaintiff's fibromyalgia flares due, in part, to Plaintiff "showing only mild wrist tenderness" upon examination. Tr. 60.

The ALJ's assessment of the effects of Plaintiff's fibromyalgia treatment is also problematic. After discussing Plaintiff's fibromyalgia flares, the ALJ observed that Plaintiff's "treatment has been routine and conservative, generally consisting of pain medication and muscle relaxants, along with anti-inflammatory medication for fibromyalgia." Tr. 61. The ALJ also noted that:

---

[4] The Court is mindful that Plaintiff was also found to suffer from severe impairments which *do* produce objective evidence, such as degenerative disc disease. Tr. 55. But, because the ALJ discussed objective findings within the same paragraph referencing "fibromyalgia flares," *see* Tr. 60, the Court cannot infer that the ALJ's discussion of this evidence was intended to pertain to a different impairment that does produce objective evidence.

> Medical observations confirmed the effectiveness of routine treatment. The claimant regularly was observed to be well appearing, well-developed, and in no distress, and ambulating independently with a normal gait and station (E.g. Ex. 1F/50, 60; 2F/8, 10, 12; 3F/7-8, 31; 10F/4, 14; 12F/4; 14F/54, 71, 118-19, 152). Physical examinations further revealed normal cervical range of motion with no subluxation, dislocation, or laxity (E.g. Ex. 14F/142, 186), and otherwise normal strength and range of motion throughout his extremities, with normal muscle tone, and no atrophy, clubbing, cyanosis, or edema (E.g. Ex. 3F/8; 14F/72, 119, 186). Moreover, examinations showed the claimant was able to squat, and he performed heel to toe walking and tandem gait normally (Ex. 14F/71, 91, 186).

*Id*. It is unclear whether the ALJ intended to refer to Plaintiff's treatment for impairments other than fibromyalgia in this paragraph. Nonetheless, the ALJ appears to have concluded that Plaintiff's routine treatment for fibromyalgia was "effective[]" because it produced, among other things, "a normal gait and station," "normal cervical range of motion," "normal strength and range of motion," and "normal muscle tone." *Id*. This analysis amounts to error inasmuch as it was based on a "misunderstanding of fibromyalgia." *Arakas*, 983 F.3d at 98. As discussed above, objective indicators such as gait, station, range of motion, and muscle strength are in no way probative of "the severity, persistence, or limiting effects of" fibromyalgia. *Id*. at 97.

In sum, remand is warranted due to the ALJ's improper evaluation of Plaintiff's fibromyalgia under *Arakas*. In remanding for further explanation, I express no opinion as to whether the ALJ's ultimate conclusion that Plaintiff is not entitled to benefits is correct.

## V.   CONCLUSION

For the reasons set forth herein, Plaintiff's motion for summary judgment, ECF 12, is DENIED. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Brendan A. Hurson
United States Magistrate Judge